IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**KELVIN T. PRICE**                                                                                               **PLAINTIFF**

**VERSUS**                                                        **CIVIL ACTION NO. 2:17-cv-122-KS-MTP**

**STAN SMITH, PAMALA WADE SMITH,**
**and TERRY HOLBROOK**                                                                         **DEFENDANTS**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendants Terry Holbrook, Pamala Wade Smith, and Stan Smith's Motion [34] for Summary Judgment. Having carefully considered the law and the record, the undersigned recommends that the Motion [34] be granted.

## BACKGROUND

Plaintiff filed this civil rights lawsuit on July 20, 2017 bringing claims relating to his arrest and subsequent incarceration. At the time of filing, Plaintiff was in the custody of the Mississippi Department of Corrections ("MDOC") but has since been released. On August 8, 2018, the Court held a *Spears*[1] hearing to clarify Plaintiff's claims and set case-management deadlines. At the hearing, Plaintiff alleged the following facts:

On May 7, 2014, Plaintiff returned from work around 9:00 p.m. to a house where his ex-girlfriend, Kassandra Ervin ("Ervin"), was spending time with her cousin Wilson. When he arrived, his ex-girlfriend Ervin had a headache, and he retrieved some Tylenol from his car. Upon returning from his car, Plaintiff noticed Wilson acting strangely. At one point, she got in the closet and claimed that a man was attempting to shoot her from outside the house. Plaintiff and Ervin were unsure about what was happening because no men were present with guns.

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

1

Two days later, May 9, 2014, Wilson claimed that she had been raped and assaulted by Plaintiff, Ervin, and another individual. Because of the rape claim, Wilson's father visited Ervin and assaulted her. Plaintiff then went to the hospital where Wilson had been taken to confront her father about assaulting Ervin. Defendant Pamala Wade Smith, an investigator in Covington County, put a taser to Plaintiff's head and prevented the situation from escalating. Plaintiff then left the hospital despite Pamala Wade Smith's request that he stay and answer some of her questions.

On May 13, 2014, Defendant Terry Holbrook, Defendant Pamela Wade Smith, and others arrested Plaintiff for the rape of Wilson and took him to the Covington County Jail. Defendant Holbrook told Plaintiff that Wilson gave three inconsistent statements and that the police did not believe Wilson. Additionally, Wilson was tested for alcohol and illegal substances, and she had enough intoxicating substances in her system to "flip a mule." Covington County officials, however, never took DNA from Plaintiff and he believes that should have been the procedure after a rape claim.

According to Plaintiff, he stayed in jail approximately eight months on the rape charge. On January 13, 2015, Plaintiff was indicted in Covington County for an aggravated assault charge that stemmed from the same alleged incident, but he was not indicted on rape charges.

Due to Plaintiff's arrest, a judge found he had violated his supervised release for an unrelated Forrest County conviction, and Plaintiff was taken into the custody of MDOC where he stayed about six months. According to Plaintiff, this judge initially did not want to revoke his supervised release because the evidence against him was not strong, but Plaintiff requested that he do so because he would rather be in MDOC custody than in the Covington County Jail. After his release from MDOC custody, he was taken back to a county jail but was later released

2

because the assault charges were dropped. Plaintiff claims he was humiliated by these charges as his name appeared in the paper multiple times.

He sued Pamela Wade Smith, the lead investigator in Covington County, because she did not investigate the case properly and he claimed she should have taken DNA from him. He asserted that her failure to investigate properly and carefully consider the evidence caused him to be wrongfully held on the crimes of rape and assault.

Plaintiff sued Sherriff Stan Smith and Terry Holbrook, the "undersheriff," because they did not ensure their investigators followed proper procedures, such as taking DNA from him. He generally claims that they did not ensure their officers investigated the crime properly and, as a result, he was held for two years on insufficient evidence.

Defendants filed a Motion [34] for Summary Judgment on November 1, 2018.  Plaintiff did not respond to the Motion [34] and the time for doing so has long since run.

## ANALYSIS

### *Summary Judgment Standard*

"[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence in the light most favorable to the non-moving party.  *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).  If the moving party meets its burden, the "nonmovant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Summary judgment is proper when "a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted). "It is improper for the district court to 'resolve factual disputes by weighing conflicting evidence, … since it is the province of the jury to assess the probative value of the evidence.'" *McDonald v. Entergy Operations, Inc.*, 2005 WL 2474701, at *3 (S.D. Miss. Apr. 29, 2005) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980)).

***Qualified Immunity***

Defendants argue they are immune from this suit under the doctrine of qualified immunity. "Police officers, like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753 (5th Cir. 2001). "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

A qualified immunity analysis requires a court to consider two questions: (1) has the plaintiff alleged a constitutional violation and (2) was that constitutional right clearly established at the time of the defendant's alleged conduct? *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (maintaining the two-step inquiry relating to qualified immunity but giving district courts the discretion to address the questions in the order that is most efficient). Defendants assert that

4

Plaintiff has not demonstrated that his constitutional rights were violated using competent summary judgment evidence and his claims should be dismissed. Plaintiff has not responded to any of the arguments made by Defendants.

**Illegal Arrest**

Plaintiff's claims against Defendants stem from what he articulated as a failure to investigate properly and a failure to supervise officers. This alleged failure led to Plaintiff's arrest for rape and later indictment for assault. Defendants assert in their Motion [34] that Plaintiff cannot succeed on an unlawful arrest claim under the Fourth Amendment because there was probable cause to arrest him.

"It is well settled that to be free from illegal arrest under the Fourth Amendment 'is a clearly established constitutional right.'" *Foster v. Covington Cty., Miss.*, 2007 WL 313059, at *5 (S.D. Miss. Jan. 30, 2007) (quoting *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998)). Plaintiff's claim, therefore, alleges a violation of a clearly established right and the Court must consider whether his right to be free from illegal seizures was violated by Defendants.

An arrest is illegal if there is an absence of probable cause. *Sorenson*, 134 F.3d at 328. Consequently, "a valid arrest warrant would normally insulate officers against a claim of false arrest." *Mendenhall v. Riser*, 213 F.3d 226, 232 (5th Cir. 2000). Moreover, when an impartial magistrate issues a valid warrant, the officers that effectuate that warrant are protected from claims of false arrest or imprisonment. *Wheeler v. Cosden Oil and Chemical Co.*, 744 F.2d 1131, 1132 (5th Cir. 1984).

Defendants submit an arrest warrant issued by Justice Court Judge Mooney. The judge considered an affidavit from Defendant Pamala Smith, the victim's injuries, and the victim's statements naming Plaintiff as one of her attackers and determined that probable cause supported

an arrest warrant for Plaintiff.  Mot. [34], Ex. A.  Plaintiff was also provided an initial appearance at which a judge considered the charges against Plaintiff and set bail.  Mot. [34], Ex. N.  Because an arrest warrant was issued by an independent magistrate and probable cause was found to arrest Plaintiff, Defendants did not violate Plaintiff's Fourth Amendment right to be free from illegal arrests.  *See Shaw v. Villanueva*, 918 F.3d 414, 417-18 (5th Cir. 2019).[2]

**Negligent Failure to Investigate**

Plaintiff alleges that Defendant Pamala Smith failed to properly investigate the rape claim, which led to his arrest.  He specifically complains that she did not collect his DNA.  Defendants, however, assert that negligence on the part of an officer in an investigation is not a constitutional claim.

"Negligence, even gross negligence, is insufficient to serve as the basis for a Section 1983 claim."  *Rogers v. Wever*, 2010 WL 3522783, at *5 (S.D. Miss. Sep. 2, 2010).  While other constitutional violations could stem from a reckless police investigation, there is not "an independent constitutional claim for being subjected to a reckless investigation."  *Hernandez v. Terrones*, 397 Fed. App'x 954, 965 (5th Cir. 2010).  This Court held previously in *Brown v. Wilkinson County Sherriff's Department* that a plaintiff's claims that the defendants did not investigate or collect evidence did not state a cause of action under § 1983.  2017 WL 1479428, at *3 (S.D. Miss. Apr. 24, 2017).

Similarly, Plaintiff has not stated a cognizable claim against Defendants for allegedly conducting a negligent investigation.  Moreover, even if he did state a claim, the record demonstrates that Defendant Pamala Smith reviewed a video interview of the victim conducted

---

[2] There is an exception to this doctrine if the defendants taint the neutral intermediary's decision, but this was not raised by Plaintiff and the record does not support this exception.  *Shaw*, 918 F.3d at 417-18.

by Defendant Terry Holbrook, attempted to interview Plaintiff despite his evasiveness, and executed a search warrant that produced evidence corroborating the victim's statement. *See* Mot. [34], Ex. E, Ex. D, Ex. C. All these investigative steps were taken before Defendant Pamala Smith sought an arrest warrant for Plaintiff. Plaintiff has not provided any competent summary judgment evidence to the contrary. The undersigned finds that Plaintiff's claim relating to a negligent failure to investigate is not cognizable under § 1983 and the record before the Court does not demonstrate that a negligent investigation was conducted.

### Failure to Supervise

Plaintiff further alleges that Defendant Stan Smith and Defendant Terry Holbrook, the sheriff and undersheriff, violated his constitutional rights by failing to properly supervise the rape investigation. Plaintiff alleges that the proper procedures were not followed, and his DNA was never taken. Defendants respond in their Motion [34] that Plaintiff cannot demonstrate a constitutional violation for failure to supervise based upon the record.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). A sheriff may be liable for failure to supervise, however, if "1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). This standard cannot be satisfied absent an underlying constitutional violation. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425-26 (5th Cir. 2006). If a constitutional violation is demonstrated, the plaintiff must then show a pattern of

similar violations to establish that the defendant acted with deliberate indifference. *Thompson*, 245 F.3d at 459.

Plaintiff has not demonstrated that he suffered a constitutional violation. As discussed previously, Plaintiff was not the subject of an illegal arrest and his claims regarding a negligent investigation on the part of the sheriff's office does not create an independent constitutional claim. The undersigned need not consider any other part of the test articulated in *Thompson* because Plaintiff has not suffered an underlying constitutional violation and there is no evidence of a pattern of these of types of alleged violations in the record. Summary judgment should be granted to Defendants on the failure to supervise claim.

**Plaintiff's Probation Revocation**

After Plaintiff was arrested on the rape charge, his probation was revoked on a different criminal conviction in Forrest County. Plaintiff spent time in MDOC custody and was later released. It is not clear if Plaintiff also seeks damages for his incarceration relating to his probation revocation, but if he is asserting that claim, Defendants argue it is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994).

The Supreme Court held in *Heck* that a prisoner may not challenge the constitutionality of his conviction in a suit for damages under § 1983 until the criminal conviction is called into question by other means, such as being reversed on direct appeal or through expungement. *Id*. The Fifth Circuit Court of Appeals applied *Heck* as an impendent to suit in in a similar case where the plaintiff claimed he was illegally arrested and because of the arrest had his probation revoked on a separate criminal matter. *See Jackson v. Vannoy*, 49 F.3d 175 (5th Cir. 1995); *see also Thomas v. Scott Cty.*, 2015 WL 5009715 (S.D. Miss. Aug. 21, 2015).

8

In this matter, any § 1983 claim Plaintiff may assert relating to his probation revocation in Forrest Count is barred under *Heck*. Plaintiff has not argued that his revocation was invalidated through other means, so he may not challenge the validity of his revocation through this civil-rights lawsuit. Summary judgment is appropriate to the extent Plaintiff seeks damages for his probation revocation.

## RECOMMENDATION

For the reasons set forth above, the undersigned recommends Defendants Motion [34] for Summary Judgment be granted and all Defendants be dismissed with prejudice.

## RIGHT TO OBJECT

In accordance with the rule and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS the 20th day of May, 2019.

s/Michael T. Parker
United States Magistrate Judge
